FILED

OCT 0 6 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EMILY C. OTOSKI, Individually and
as Personal Representative of the Estate
of Richard E. Otoski, for the benefit of
EMILY C. OTOSKI, surviving wife
of the deceased and NATHAN OTOSKI,
MATTHEW OTOSKI, and SHANNON
LEE, surviving children of the deceased,

        Plaintiff,

v.

AVIDYNE CORPORATION, a Delaware
corporation; CESSNA AIRCRAFT
COMPANY, a Kansas corporation,

        Defendants.

CV.09-3041-PK

FINDINGS AND
RECOMMENDATION

---

PAPAK, Magistrate Judge:

    On February 16, 2008, a Columbia LC41 550FG ("Columbia 400") aircraft manufactured

by Columbia Aircraft Manufacturing Company ("Columbia"), crashed near the Portland

International Airport, killing the pilot, Dr. Richard E. Otoski ("Dr. Otoski"). Prior to the crash,

Page 1 - FINDINGS AND RECOMMENDATION

Columbia went into bankruptcy, sold its assets, and was liquidated. Cessna Aircraft Company ("Cessna") purchased Columbia's assets in a bankruptcy sale approved by the Bankruptcy Court for the District of Oregon in an order dated November 28, 2007.

On April 9, 2009, plaintiff Emily C. Otoski ("Otoski"), individually, and as the personal representative of the Estate of Richard E. Otoski, filed this action against Avidyne Corporation ("Avidyne"), Cessna, Edward A. Wakefield ("Wakefield"), and Michael E. Gomes ("Gomes") in Multnomah County Circuit Court, as Case No. 0904-04976, alleging claims for strict product liability and negligence. On May 5, 2009, the action was removed to federal court. Shortly thereafter, the parties entered into a written stipulation removing individually named Columbia employees Wakefield and Gomes from the action (# 34), leaving only Avidyne and Cessna as defendants. The court has jurisdiction over these claims pursuant to 28 USC § 1332.

Otoski alleges that Avidyne's electronic flight instrument system ("EFIS") avionics package was in a defective condition, which caused an inaccurate display of information and also caused the warning systems to fail to notify Dr. Otoski of this inaccurate information in a timely manner. Otoski further alleges that both Avidyne and Cessna knew of this defect and failed to adequately warn Dr. Otoski of the potentially dangerous condition of the EFIS avionics package.

Presently before the court are Cessna's motion for summary judgment (#50) and Otoski's motion for leave to conduct destructive examination (#65). I have considered the motions, oral argument, and all of the pleadings on file. For the reasons discussed below, both motions should be granted.

///

///

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 369 (9th Cir. 1998).

In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts. *See* Fed.R.Civ.P. 56; *see also, e.g., Fair Horn. Council v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001).

## BACKGROUND

In late 2004, the Otoskis entered into a contract to purchase a Columbia 400 aircraft from the Lancair Company. (Schoeggl Decl., (#51), Exs. A-D.) The Lancair Company was later renamed Columbia Aircraft Manufacturing Company. (Clarke Decl., (# 61), ¶ 5, Ex. 3, p. 2.) On

September 24, 2007, Columbia filed for Chapter 11 bankruptcy protection. (Def.'s Statement of Facts (#52), ¶ 6.)

On October 30, 2007, Columbia filed a Notice of Intent to Sell Property, Motion for Authority to Sell Property Free and Clear of Liens, and Notice of Hearing ("Notice"). (Schoeggl Decl., Ex. E.) As an existing aircraft owner, Dr. Otoski was served with a copy of the Notice and attachments. (*Id.* at ¶ 18, p. 38.) The Notice stated that Columbia "intends to sell at auction substantially all of its assets as set forth below and moves for authority to sell said property free and clear of liens pursuant to 11 U.S.C. § 363(f)." (*Id.* at p. 1) The Notice identified Cessna as a potential purchaser, indicated that other bidders would be given the opportunity to present superior bids, and stated that a hearing would be held on November 27, 2007, to consider the sale terms. (*Id.* at ¶¶ 2, 6, 9, 13, 16)

The Notice included an express limitation on Cessna's obligation to assume liabilities and included as an attachment those sections of the Purchase and Sale Agreement ("PSA") relating to the liabilities assumed by Cessna. (*Id.* at ¶ 7, Ex. A.) Section 2.3 of the PSA enumerated six assumed liabilities Cessna would retain, which included liability for: (1) secured pre-petition claims held by Garmin, (2) retail customer deposits paid to seller for new aircraft that had not been delivered by the closing date, (3) aggregate potential claims resulting from the E-VADE System installed on Columbia aircraft sold prior to the closing date, (4) aggregate potential claims arising from potential warranty claims arising from products sold by Columbia prior to the closing date not otherwise paid in the bankruptcy, (5) accrued liability of employees transferred or hired within one month after closing date, and (6) Columbia's obligations arising under the assigned contracts. (*Id.*, Ex. A.) Section 2.4 of the PSA states that except for these assumed

liabilities, Cessna "shall not assume by virtue of this Agreement or the transactions contemplated hereby, and shall have no liability for, any Liabilities of Seller . . . of any kind, character or description whatsoever[.]" (*Id.*)

The Notice explicitly states that:

> CESSNA DOES NOT . . . ASSUME AND WILL NOT HAVE ANY
> LIABILITY TO PAY THE FOLLOWING CLAIMS:
> * * *
> (B) To the extent permitted by applicable law, any and all claims by
> existing aircraft owners for personal injury, death and/or property damage
> resulting from aircraft or parts manufactured or sold by Debtor prior to the
> closing date . . . including but not limited to claims arising out of
> negligence, strict liability, failure to warn, crashworthiness, and any other
> theory, statute, or law regarding product liability[.]
> * * *
> If you object to these provisions, you need to file a timely objection and
> attend the hearing as set forth in this Notice.

(*Id.* at ¶ 7.)

There is no evidence that Dr. Otoski appeared at the bankruptcy hearing or otherwise objected to the sale. The day after the November 27, 2007 hearing, Bankruptcy Judge Elizabeth Perris issued a detailed Order approving the sale of Columbia's assets to Cessna. (Clarke Decl., Ex. 4.)[1] The Order expressly provides that it binds all individuals who received actual notice of the proceedings, including "all owners of aircraft purchased from [Columbia] prior to October 29, 2007 . . . and others who might have potential claims against [Columbia]." (*Id.* at pp. 3-5, ¶ 5.) All those who had been properly noticed and did not object were deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code. (*Id.* at pp. 5-6, ¶ 7.) All objections that had not been withdrawn, waived, or settled, were denied and overruled on the merits and with prejudice.

---

[1] Cessna also submitted a copy of the Order (Schoeggl Decl., Ex. F), but as it appears on ECF, it is difficult to read. Unless otherwise indicated, all citations are to Otoski's copy.

(*Id*. at p. 9, ¶ 2.)

The Order states in relevant part:

> 7. Purchaser shall be entitled to take the Assets free and clear of any claim of successor liability, as against all parties who received actual notice of the Motion or the Sale or who received adequate notice in accordance with applicable law regarding due process.

> 8. As to all persons and entities who received actual notice of the Motion or the Sale, Purchaser shall have no liability or responsibility for any liability or other obligation of Debtor arising under or related to the Assets other than as expressly set forth in the Agreement. Without limiting the generality of the foregoing, CESSNA DOES NOT ASSUME AND WILL NOT HAVE ANY LIABILITY TO PAY THE FOLLOWING CLAIMS:
> * * *
> > (b) To the extent permitted by applicable law, any and all claims by existing aircraft owners for personal injury, death and/or property damage resulting from aircraft or parts manufactured or sold by Debtor prior to the Notice Date, including but not limited to claims arising out of negligence, strict liability, failure to warn, crashworthiness, and any other theory, statute, or law regarding product liability[.]

(*Id*. at p. 11, ¶¶ 7-8.)

On February 16, 2008, Dr. Otoski was killed when his aircraft crashed near the Portland International Airport. On April 19, 2009, Otoski brought this suit, alleging products liability and negligence.

## ANALYSIS

### I.   Motion for Summary Judgment

Cessna asserts that it is entitled to summary judgment because Otoski's suit for negligent failure to warn is expressly barred by the bankruptcy court's Order due to Cessna's status as a "free and clear" asset purchaser. Moreover, because Cessna did not manufacture the aircraft or the allegedly defective EFIS avionics package, there is no basis under Oregon law to impose a

duty to warn, either as a successor to Columbia or under an independent "duty to warn" theory. In the alternative, Cessna argues that even if Oregon law would allow for such an action, a state law tort claim would be preempted by federal aviation regulations.

In response, Otoski asserts that the bankruptcy court order is invalid because it extends beyond the statutory jurisdiction and authority of the bankruptcy court. Moreover, Cessna had an independent duty to warn of the dangerously defective EFIS avionics package because Cessna was the holder of the type certificate for Dr. Otoski's aircraft, and FAA regulations require that type certificate holders have a duty to warn of dangerous conditions. Because Oregon law recognizes that a failure to warn claim may arise because of duty conferred by statute, status, or a special relationship between the parties, Cessna's status as a holder of the type certificate gave rise to a duty to warn under Oregon law. Finally, she asserts that her failure to warn claim is not impliedly preempted by federal law.

## A.  Effect of Bankruptcy Order[2]

The Bankruptcy Code sets forth a process by which a company can purchase the assets of a bankrupt entity free and clear of claims arising out of those assets, so long as certain statutory requirements are met. 11 U.S.C. § 363(f). Bankruptcy courts may cut off the asset purchaser's risk of exposure to future lawsuits because of the importance of maximizing the value of

---

[2] Otoski takes issue with Columbia's cancellation of its $100 million product liability insurance policy because if the policy remained in effect for the time required by the Order, she would be able to fully recover on her claim. However, the policy was cancelled just weeks before Dr. Otoski's fatal crash, in violation of the Order and without any notification to the bankruptcy court. (Clarke Decl., Exs. 6-7; Schoeggl Decl., ¶¶ 7-9.) She does not allege that Cessna had any role in this cancellation. To the extent that Otoski takes issue with Columbia's failure to maintain this insurance, she must bring that before the bankruptcy court, which has retained jurisdiction over enforcement of the Order. (Clarke Decl., Ex. 4 at p. 16, ¶ 23.)

bankruptcy estates, and the desire to avoid a skewed distribution scheme which would result from allowing a party who was injured post-petition by pre-petition conduct to assert a claim against an asset purchaser to be given priority over claimants who were injured before plan confirmation. *See Douglas v. Stamco*, 363 Fed. Appx. 100, 103 (2nd Cir. 2010) (discussing public policy concerns implicated in free and clear sales), *citing Toibb v. Radloff*, 501 U.S. 157, 163, 111 S. Ct. 2197, 115 L.E.2d 145 (1991) (recognizing that the Bankruptcy Code's general policy is "maximizing the value of the bankruptcy estate."); *In re Gucci*, 126 F3d 380, 387 (2nd Cir. 1997) (sales pursuant to § 393 "maximiz[e] the purchase price of assets because without this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the risk of endless litigation."); *see also In re Trans World Airlines, Inc.*, 322 F3d 283, 292 (3rd Cir. 2003) (discussing the Bankruptcy Code's priority scheme).

The effect of a free and clear order is complicated "by the fact that the recently created state law theory of successor liability . . . is simply inconsistent with more ancient federal bankruptcy principles based upon the sale of a debtor's assets to maximize the estate for creditors." *In re Paris Industries Corp*, 132 B.R. 504, 509 n. 11 (D. Me. 1991), citing *In re White Motor Credit Corp.*, 75 B.R. 944, 950-51 (N.D. Ohio 1987); *see also Nelson v. Tiffany Indus., Inc.*, 778 F.2d 533 (9th Cir. 1985). "Successor liability doctrines vary from state to state, but generally successor liability will not attach unless (1) the purchaser expressly or impliedly assumed the liability, (2) the transaction amounted to a merger or consolidation of the business, (3) the purchaser was merely a continuation of the seller or (4) the transaction was entered into fraudulently in order to avoid liability for the obligations." 8 *Collier on Bankruptcy* ¶ 1141.04[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). While some jurisdictions have recognized

a product line exception to the general rule, Oregon does not recognize such an exception. *See Id.*; *Western Helicopter Svcs., Inc. v. Rogerson Aircraft Corp.*, 728 F. Supp. 1506, 1512 (D. Or. 1990).

In wrestling with the difficult issue of how to resolve future tort claims when administering a bankruptcy estate, many courts have focused on the adequacy of the notice to future claimants. *See In re Savage Indus., Inc.*, 43 F3d 714, 720 (1st Cir. 1994) ("Notice is the cornerstone underpinning Bankruptcy Code procedure."); *Schwinn Cycling & Fitness, Inc. v. Benonis*, 217 B.R. 790, 797 (N.D. Ill. 1997) (finding that claimants could not be enjoined from pursuing their state law remedies when they were not provided any notice of, or the opportunity to participate in, the bankruptcy court proceedings); *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 928-33 (Bankr. W.D. Tex. 1995), *vacated on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998) (a bankruptcy court's order may extend to future claims if the claimant's interests received adequate representation in the bankruptcy proceeding). It has been observed that "in all the cited opinions that precluded successor liability claims against asset purchasers in bankruptcy, the claimants were in front of the bankruptcy court during the bankruptcy proceedings, or the court found that the claimants should have brought their claims during the bankruptcy proceedings." *In re Ninth Avenue Remedial Group*, 195 B.R. 716, 732 (N.D. Ind. 1996) (citing cases). A recent decision by this court recognized the enforceability of a "free and clear" sale ordered by a bankruptcy court in order to bar a plaintiff's successor liability claim in the context of ERISA because such a claim is an "impermissible collateral attack on the decision of the Bankruptcy Court." *Huntsinger v. Shaw Group, Inc.*, 410 F.Supp.2d 968, 976 (D. Or. 2006).

Otoski asserts that the free and clear order should not be enforced to bar her claim

because bankruptcy court jurisdiction is limited to claims that arise during the bankruptcy proceeding, are by and against the debtor, or those which may affect the amount of property in the bankruptcy estate. In support, she relies heavily upon *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994), where the court concluded that bankruptcy courts do not have jurisdiction to enjoin future claimants. However, critical to the Seventh Circuit's decision was that the dispute was "between a purchaser at the bankruptcy sale and a person who had nothing to do with the bankruptcy." *Id.* at 162. Here, Dr. Otoski was a party to the bankruptcy proceeding since he received actual notice of the proposed sales agreement and hearing.

The Notice sent to Dr. Otoski on October 30, 2007, made clear that Columbia intended to sell its assets free and clear of liens, identifying the specific subsections of 11 U.S.C. § 363(f) which it was relying upon for authority to sell the property free and clear, and providing information regarding the bid procedure process, Columbia's assets, the sales price, and how a party could object to the sale.

The Notice also included detailed information regarding the limited liabilities that Cessna would assume. It included as an attachment those sections of the PSA relating to liabilities assumed by Cessna, and directed recipients to carefully review the attachment because "Cessna will not assume any liabilities and will not pay any claims against Debtor except as expressly stated in Sections 2.3 and 2.4 of the PSA." (Schoeggl Decl., Ex. E, at ¶ 7, Ex. A.) Section 2.3 of the attachment clearly set forth the six limited liabilities Cessna would assume, and Section 2.4 stated that except for these liabilities, Cessna would not have any liability for "any Liabilities of Seller . . . of any kind, character or description whatsoever[.]" (*Id.*) Otoski does not allege that her claim falls within one of these six categories of assumed liabilities.

Included at the top of the second page of the Notice was a paragraph clearly stating that Cessna would not assume and would not have liability to pay claims by existing aircraft owners for personal injury, death, or property damage "resulting from aircraft or parts manufactured or sold by Debtor prior to the Notice Date, including but not limited to claims arising out of negligence, strict liability, failure to warn, crashworthiness, and any other theory, statute, or law regarding product liability[.] (*Id.* at ¶ 7.) This is precisely the type of claim brought by Otoski.

After conducting a hearing on November 27, 2007, Judge Perris issued a detailed Order (Clarke Decl., Ex. 4.) The Order incorporated the language from the Notice expressly barring successor liability tort claims asserted by aircraft purchasers like Otoski, who purchased their aircraft prior to Columbia's bankruptcy and received actual notice of the bankruptcy and pre-petition claim process. The Order states in relevant part:

> 7. Purchaser shall be entitled to take the Assets free and clear of any claim of successor liability, as against all parties who received actual notice of the Motion or the Sale or who received adequate notice in accordance with applicable law regarding due process.

> 8. As to all persons and entities who received actual notice of the Motion or the Sale, Purchaser shall have no liability or responsibility for any liability or other obligation of Debtor arising under or related to the Assets other than as expressly set forth in the Agreement. Without limiting the generality of the foregoing, CESSNA DOES NOT ASSUME AND WILL NOT HAVE ANY LIABILITY TO PAY THE FOLLOWING CLAIMS:
> * * *
>> (b) To the extent permitted by applicable law, any and all claims by existing aircraft owners for personal injury, death and/or property damage resulting from aircraft or parts manufactured or sold by Debtor prior to the Notice Date, including but not limited to claims arising out of negligence, strict liability, failure to warn, crashworthiness, and any other theory, statute, or law regarding product liability[.]

(Clarke Decl. at p. 11, ¶¶ 7-8.)

The Order also incorporated the final PSA, which specifically enumerated the six assumed liabilities that Cessna would retain. The final PSA's language is almost identical to the draft PSA included with the Notice and sent to Dr. Otoski. (*Compare* Schoeggl Decl., Ex. E, p. 25 *with* Schoeggl Decl., Ex. F, Ex. A, p. 13.) As an existing aircraft owner, Dr. Otoski was served with a copy of the Notice and attachments. Despite being well aware of the process for objecting, as set forth in the first paragraph of the Notice, Dr. Otoski did not object to any of the terms of the sale.[3]

The Order in this case fully comported with fundamental due process. The parties negotiated the terms of the purchase agreement, notice was given to all owners of aircraft purchased prior to Columbia's bankruptcy as well others who might have potential claims, a hearing was conducted, and a detailed order entered clearly enumerating the liabilities that Cessna would assume as well as those which it would not. The plain language of the Order clearly and explicitly prohibits Otoski's successor liability claim for failure to warn. Accordingly, the bankruptcy court was well within its authority to include the condition that Cessna's purchase was free and clear of all successor liability claims based upon products manufactured, sold, and delivered prior to closing.

## B.  Independent Duty to Warn

In the alternative, Otoski argues that her claim is not based on successor liability but is an independent duty to warn claim arising out of Cessna's post-petition conduct, and therefore not precluded by the Order. The third amended complaint alleges that Cessna would have been

---

[3] Nor is there any evidence that any other Columbia aircraft owner or owners group came forward to object to the proposed "free and clear" sale.

aware of information relating to the allegedly defective EFIS avionics package as part of its

purchase of the Columbia aircraft product line, by way of Columbia documents, correspondence,

and memoranda, discussions with Columbia personnel, and from one or more lawsuits that were

pending at the time of the sale. (Third Amended Complaint (# 89), ¶ 24). At oral argument,

Otoski's counsel alleged that Cessna took the following actions after the sale which form the

basis for an independent failure to warn claim: (1) Cessna did not send to Columbia aircraft

owners the Avidyne service bulletin recommending repair of the EFIS avionics package, (2)

Cessna did not advise Columbia aircraft owners that Avidyne's service bulletin recommending

repair was wholly inadequate, and (3) Cessna took down Columbia's service bulletins, which

included the Avidyne service bulletin regarding the EFIS avionics package, that were once freely

available on the company's website. (*See id.* at ¶ 27).

However, none of these allegations establish that Cessna acquired any new information

relating to the allegedly defective EFIS avionics package after the purchase. The record does not

indicate that there were any new service bulletins issued after the purchase that related to

Avidyne's allegedly defective EFIS avionics package, or that Columbia somehow failed to

properly notify the owners at the time it initially received the service bulletin in a way that would

require Cessna to re-notify the owners. Nor was any other information received by Cessna after

the purchase relating to the allegedly dangerous condition of the EFIS avionics package such as

to require some action on Cessna's part. Otoski argues that Cessna's knowledge of the allegedly

dangerous condition of the EFIS avionics package comes only from documents it acquired as part

of the asset purchase, some of which allegedly indicate that Columbia, and therefore, Cessna,

knew that the problem was more serious than it represented to the owners. However, Otoski has

not presented a single document in support of this allegation, much less any evidence that Cessna was made aware of such a document in the three months between the sale and the accident.

Viewing the facts in the light most favorable to Otoski, the factual record is wholly insufficient to support her assertion that Cessna acquired any new information relating to the allegedly defective EFIS avionics package after the consummation of the sale sufficient to support a cause of action for an independent duty to warn. Otoski's claim against Cessna is a typical successor liability case dressed up to look like something else, and is prohibited by the plain language of the bankruptcy court's Order.

### C.    Conclusion

Because I conclude that the free and clear order is well within the power of the bankruptcy court, and this case is not a duty to warn case based on later acquired information, Otoski's claims against Cessna are precluded as a matter of law by the bankruptcy court's November 28, 2007 Order. Thus, I need not address Cessna's additional arguments that it had no duty to warn under Oregon law and that any state law claim would be preempted by federal aviation regulations. Accordingly, Cessna's motion for summary judgment should be granted and Cessna dismissed from the action.

## II.    Motion for Leave to Conduct Destructive Examination

Otoski filed a motion to conduct destructive testing of capacitors from the accident aircraft, which would involve cross-sectioning the capacitors and examining them for internal damage. Pursuant to the Evidence Preservation Order (#38), because the proposed testing involves a destructive component, the court must approve the examination if all parties do not consent. Avidyne's counsel does not object to Otoski's second revised protocol, but Cessna has

lingering concerns that it wants incorporated into a third revised protocol. However, as discussed above, I recommend granting Cessna's motion for summary judgment, thereby removing Cessna from this case. Accordingly, Cessna's objections to the testing and requested third revised protocol are moot. Thus, Otoski's motion to conduct destructive testing should be granted.

## RECOMMENDATION

For the reasons set forth above, Cessna's motion for summary judgment (#50) should be granted because Otoski's claims against it are precluded as a matter of law by the bankruptcy court's November 28, 2007 Order. Otoski's motion for leave to conduct destructive examination (#65) should be granted because Cessna is no longer a party to the action, rendering its objections moot.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 6th day of October, 2010.

Paul Papak
United States Magistrate Judge