FILED

DEC 1 3 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EMILY C. OTOSKI, Individually and
as Personal Representative of the Estate
of Richard E. Otoski, for the benefit of
EMILY C. OTOSKI, surviving wife
of the deceased and NATHAN OTOSKI,
MATTHEW OTOSKI, and SHANNON
LEE, surviving children of the deceased,

                    Plaintiff,

v.

AVIDYNE CORPORATION, a Delaware
corporation; CESSNA AIRCRAFT
COMPANY, a Kansas corporation,

                    Defendants.

CV.09-3041-PK

AMENDED ORDER

PAPAK, Magistrate Judge:

On November 29, 2010, this court held oral argument on various discovery matters.

Several motions were disposed of in open court, as memorialized in the December 1, 2010,

Minute Order (#136). Currently before the court is Otoski's Motion to Remove Confidential

Page 1 - AMENDED ORDER

Designations and Unseal the Sealed Exhibits Filed on October 26, 2010; To Unseal the Sealed

Memorandum in Support of Plaintiff's Motion to Compel; To Unseal This Memorandum; and

To Unseal Deposition Exhibit 54 (#101).

In accordance with the terms of the Stipulated Protective Order (# 46) signed by the

parties, Otoski filed several documents together as Sealed Exhibits (#100) in connection with the

various discovery motions she filed in October 2010.  In the current motion she seeks to unseal

all the exhibits contained therein, as well as unseal several memoranda filed in support of her

various motions, specifically her Memorandum in Support of Plaintiff's Motion to Compel

(#99), and Memorandum in Support of Motion to Remove Confidential Designations (#104).

She also asks the court to unseal Exhibit 54, which was the subject of another motion (# 102),

and which was denied as moot during the November 29, 2010, hearing because the parties agreed

on a redaction of Exhibit 54.  Accordingly, the portion of the motion concerned with unsealing

Exhibit 54 is moot, as Exhibit 54 is currently unsealed in redacted form.

Otoski's position is that the none of the exhibits contained in Docket #100 meet the

standard for protection because they are not trade secrets, but instead contain information

regarding a defective, dangerous product that is of important public concern.  In accordance with

the terms of the protective order, Otoski has requested that Avidyne withdraw the confidential

designations of these documents.  Avidyne asserts that the documents warrant protection under

the order because they contain trade secrets and proprietary information..

Protective orders are governed by FRCP 26, which provides that a "court may, for good

cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense," including "requiring that a trade secret or other confidential research,

Page 2 - AMENDED ORDER

development, or commercial information not be revealed or revealed only in a specified way."

FRCP 26(c)(G). When a party challenges the contention that specific documents belong under

seal, the designating party must make an actual showing of "good cause" for their continued

protection under FRCP 26(c). *Folz v. State Farm Mut. Auto Ins. Co.*, 331 f.3d 1122, 1130 (9th

Cir. 2003). Under the "good cause" standard, the designating party "bears the burden, for each

particular document it seeks to protect, of showing that specific harm will result" if the

documents are not protected. *Id.* at 1130. Local Rule 26-4 makes clear that "[b]road allegations

of harm, unsubstantiated by specific examples or articulated reasoning does not satisfy the

requirements of this rule." Accordingly, Avidyne bears the burden of establishing "good cause"

to protect each of the documents.

At the hearing held on November 29, 2010, this court asked the parties to confer and

inform the court by December 6, 2010, whether they sought a more limited request for removal

of confidential designations. While Otoski has not formally requested a more limited request,

she has not objected to Avidyne's December 6, 2010, email submission which includes an

exchange between the parties on this issue. Thus, the court will address Otoski's limited request

for removal of confidential designations and unsealing as set forth in her December 1, 2010,

email, forwarded to the court by Avidyne on December 6, 2010.

Of the 23 exhibits under seal in Docket #100, the parties disagree on all except exhibits 8,

12, and 14-15. Accordingly, those exhibits are unsealed in their entirety. The parties disagree on

the designation in whole or in part for the remaining exhibits. Essentially, the parties disagree on

their characterization of the content of the documents. Otoksi believes that the documents should

be unsealed because they contain important safety information about an allegedly dangerously

defective product, about which the public has a right to know. Otoski asserts that Avidyne has

broadly declared documents "confidential" in order to protect themselves from embarrassment

and potential profit loss, which does not satisfy the "good cause" standard. Avidyne asserts that

it has properly designated the documents as confidential in order to protect proprietary

information related to the design of its glass cockpit system, for which it is the market-leading

developer in a highly competitive market.

  In this case, discussion of the design is the same as discussion of the defect. Dr. Otoski's

aircraft was manufactured during the time Avidyne was investigating reports of erroneous

attitude and heading malfunctions on its PFDs. As part of that investigation, Avidyne assembled

a group of employees (the "Tiger Team") in order to study and propose design changes in order

to remedy the reported malfunctions. Avidyne asserts that as part of their work, the Tiger Team

conducted an analysis of the PFD's design using a specific engineering methodology designed to

identify the potential causes and symptoms of the malfunctions and develop a solution to the

problem. During this time, Avidyne was in regular communication with the FAA about the Tiger

Team's findings and proposed fixes, which included design changes. Among the documents still

in dispute are minutes from Tiger Team meetings, depositions of Avidyne employees who were

members of the Tiger Team or had knowledge of the Tiger Team's work, correspondence with

the FAA about this process, and other correspondence about specific units that had

malfunctioned. Avidyne took steps to keep this information from being disclosed long before the

commencement of this suit, designating some of the documents confidential at the time of their

creation, and requiring all Avidyne employees to sign an agreement forbidding their disclosure of

propriety information to outsiders. *See* Barber Decl. (#118), ¶¶ 3-8.

At this stage in the case, when discovery has not yet closed and the parties have yet to refine and present their theories of the case, Avidyne's argument that it will suffer harm to its competitive position if the documents were unsealed is persuasive.  While the documents in dispute do not necessarily contain information that would allow one of Avidyne's competitors to reverse engineer any of Avidyne's products, they do contain proprietary information related to the company's design process of the allegedly defective product, including research, analysis, findings, and communications containing proprietary facts, that if released, could damage Avidyne's competitive position.  Accordingly, Avidyne has satisfied the "good cause" standard required for continued protection of each of the remaining documents in Sealed Exhibit #100. Thus, exhibits 1-7, 9-11, 13, 16, and 18-21 will remain sealed in their entirety.[1]  Exhibits 8, 12, 14-15, 17, 22, and 23 will be unsealed, with the exception of the following specified pages which will remain under seal:

Exhibit 17 - page Avidyne32847

Exhibit 21 - pages Avidyne27474 and 27477

Exhibit 23 - page Avidyne32853.

---

[1] The court recognizes that the parties agree to the removal of confidential designations on a limited number of deposition pages for three witnesses, Fred Barber (Exhibit 4), Steve Jacobson (Exhibit 5), and Earl Funderburk (Exhibit 6).  In the interest of clarity and because the parties cannot agree to remove the designations for all the deposition pages included in these exhibits, these three exhibits will remain under seal in their entirety.

## ORDER

As discussed above, Otoski's Motion (#101) is granted in part and denied in part.

Exhibits 1-7, 9-11, 13, 16, and 18-21, will remain under seal in their entirety. Exhibits 8, 12, 14-15, 17, 22, and 23 will be unsealed, with the exception of the following specified pages which will remain under seal:

Exhibit 17 - page Avidyne32847

Exhibit 21 - pages Avidyne27474 and 27477

Exhibit 23 - page Avidyne32853.

Exhibit 54 will remain unsealed in its redacted form. All supporting memoranda that refer to these sealed exhibits will remain sealed, including Otoski's Memorandum in Support of Plaintiff's Motion to Compel (#99), and Otoski's Memorandum in Support of Motion to Remove Confidential Designations (#104). Docket entry (#100) will remain sealed as a whole and docket entry (#144) shall be sealed by the clerk. Otoski is instructed to refile electronic copies of the unsealed exhibits in a separate entry on the court's CM/ECF system.

DATED this 13th day of December, 2010.

Paul Papak
United States Magistrate Judge

Page 6 - AMENDED ORDER