IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EMILY C. OTOSKI, Individually and
as Personal Representative of the Estate
of Richard E. Otoski, for the benefit of
EMILY C. OTOSKI, surviving wife
of the deceased and NATHAN OTOSKI,
MATTHEW OTOSKI, and SHANNON
LEE, surviving children of the deceased,

                 Plaintiff,

v.

AVIDYNE CORPORATION, a Delaware
corporation,

                 Defendant.

3:09-CV-3041-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

On February 16, 2008, a Columbia LC41 550FG ("Columbia 400") aircraft manufactured

by Columbia Aircraft Manufacturing Company ("Columbia"), crashed near the Portland

International Airport ("PDX"), killing the pilot, Dr. Richard E. Otoski ("Dr. Otoski"). On April

Page 1 - OPINION AND ORDER

9, 2009, plaintiff Emily C. Otoski ("Otoski"), individually, and as the personal representative of the Estate of Richard E. Otoski, filed this action against Avidyne Corporation ("Avidyne"), Cessna Aircraft Company ("Cessna"), Edward A. Wakefield ("Wakefield"), and Michael E. Gomes ("Gomes") in Multnomah County Circuit Court, as Case No. 0904-04976, alleging claims for strict products liability and negligence.

On May 5, 2009, the action was removed to federal court. Shortly thereafter, the parties entered into a written stipulation removing individually named Columbia employees Wakefield and Gomes from the action (#34), leaving only Avidyne and Cessna as defendants. In January 2011, Otoski filed a motion to dismiss her claims against Cessna because they had reached settlement (#151). On January 18, 2011, Cessna was dismissed with prejudice (#153)

Otoski alleges that Avidyne's Entegra electronic flight instrument system ("EFIS") avionics package, consisting of the Primary Flight Display ("PFD"), Multi-Function Display ("MFD"), and Attitude and Heading Reference System ("AHRS"), was defective. Otoski theorizes that a foreign object, a metal disk, was improperly soldered between two pins on the J1/P1 connector, located inside the Inertial Reference Unit ("IRU"), a component of the AHRS located inside the PFD. Over time, this metal disk created an electrical connection, which led to an inaccurate display of critical information on Dr. Otoski's PFD during the fight, ultimately causing him to crash. Otoski further alleges that Avidyne knew of this defect and failed to adequately warn Dr. Otoski of the potentially dangerous condition of the EFIS avionics package.

On November 14, 2011, this court issued a Findings and Recommendation denying Avidyne's motion for summary judgment, issuing a sealed version (#210) and a redacted, unsealed version (#211). On March 5, 2012, District Judge Anna Brown adopted the Findings

and Recommendation (#229).

Presently before the court is Douglas P. Desjardins' ("Desjardins") motion to intervene (#220). I have considered the motion, oral argument, and all of the pleadings on file. For the reasons discussed below, the motion should be granted and Desjardins permitted to permissively intervene.

## ANALYSIS

Desjardins seeks to intervene in this action in order to gain access to a complete unredacted copy of the summary judgment Findings and Recommendation and all of the sealed supporting evidence that makes up the summary judgment record. Desjardins is a plaintiff's attorney who, with co-counsel Roger Roe, is currently representing two families ("Karsten and Meserve"), in a consolidated action against Avidyne in Minnesota state court, which also includes a third plaintiff, the McCormick family, represented by Arthur Wolk ("Minnesota case"). Karsten and Meserve were passengers on a Piper Meridian aircraft equipped with an Avidyne PFD/MFD system, which was piloted by McCormick, and which all on board perished after an in-flight breakup on June 28, 2007, near Wellsville, Missouri. Desjardins also previously represented the plaintiff in a similar action against Avidyne in this court, *Jones v. Avidyne Corp.*, Civil No., 06-1656-ST.[1] Desjardins served as co-counsel on the *Jones* case with

---

[1] On March 31, 2010, Magistrate Judge Janice Stewart entered an Order of Dismissal in the *Jones* case after the parties reached settlement. Since that time, there has been some dispute regarding sealing of certain records. On April 20, 2010, Karsten and Meserve sought to intervene in *Jones* for the purpose of obtaining access to sealed documents, but during the hearing on the motion, the parties agreed that if Avidyne disclosed the Bates numbers of certain documents, the motion would be rendered moot. Avidyne turned over the documents and the motion was denied as moot. However, during the hearing, one of Karsten and Meserve's attorneys, Roger Roe, revealed that he had obtained an unredacted copy of an earlier show-cause hearing in the *Jones* matter, which had since been redacted. Shortly thereafter, Avidyne filed a

Matthew Clarke and Robert Hopkins, Otoski's counsel in this case. Despite his role in past and present litigation related to Avidyne's PFD, Desjardins seeks to intervene as a member of the general public in order to challenge Avidyne's designation of the documents as confidential. He seeks to have the documents unsealed and released to him and also unsealed for viewing by the general public. The court will first consider whether Desjardins may intervene before turning to whether Avidyne has met its burden for keeping the summary judgment Findings and Recommendation and supporting documents under seal.

## I. **Intervention**

### A. **Intervention as of Right**

FRCP 24(a) provides that, "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Ninth Circuit has adopted a four-part test for applying FRCP 24(a)(2):

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be

---

Motion to Compel to require counsel for Karsten/Meserve to return the unredacted copies of the transcript and disclose who, if anyone, had been provided copies. The motion was granted by Magistrate Judge Janice Stewart on August 3, 2010, and affirmed by District Judge Michael Mosman on September 24, 2010. Karsten/Meserve appealed. On January 24, 2012, the Ninth Circuit affirmed the court's order, and on February 10, 2012, Karsten and Meserve petitioned for rehearing en banc, which was denied on February 22, 2012. Desjardins was one of three attorneys representing Karsten and Meserve in the Ninth Circuit, though he was not involved in litigating the underlying motion to compel when it was in this court.

situated such that disposition of the action may impair or impede the
party's ability to protect that interest; and (4) the applicant's interest must
not be adequately represented by the parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir.), *cert. denied*, 540 U.S. 1017 (2003); *see
also United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990), *cert. denied*, 501 U.S. 1250
(1991).

The Ninth Circuit has held that district courts are to interpret the requirements of Rule
24(a)(2) broadly in favor of intervention. *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir.
2006); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). To determine whether
intervention is appropriate, courts are guided primarily by practical and equitable considerations,
and are required to accept as true the non-conclusory allegations made in support of intervention.
*See Donnelly*, 159 F.3d at 409; *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810,
819-20 (9th Cir. 2001).

## 1. **Timeliness**

Timeliness is a threshold requirement for intervention as of right. *Oregon*, 913 F.2d at
588. In determining timeliness, three factors are considered: (1) the stage of the proceeding at
which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for
and the length of delay. *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986),
*cert. denied*, 480 U.S. 946 (1987). "Any substantial lapse of time weighs heavily against
intervention." *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996); *League
of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997). The critical inquiry
is when Desjardins became aware that his interest could not be protected adequately by the
parties. *See United Airlines Inc. v. McDonald*, 432 U.S. 385, 394 (1977).

Here, Desjardins seeks to unseal the summary judgment materials and gain access to the unredacted Findings and Recommendation. Desjardins' interest in having the summary judgment materials unsealed arose when this court's sealed Findings and Recommendation was docketed on November 14, 2011, because, at this point, "the injury to the public's right of access became clear." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1101 (9th Cir. 1999). Desjardins sent a letter to the court on December 13, 2011, inquiring as to the proper procedure to gain access to the sealed materials, and filed the current motion on January 17, 2012. (Stinson Decl. (#226), Ex. A (Desjardins' December 13, 2011, letter).)

According to Avidyne, the motion is untimely because it was only filed after the discovery, expert disclosure, and summary judgment deadlines passed in the Minnesota case, for which Desjardins serves as plaintiffs' counsel. Discovery closed in the Minnesota case on May 18, 2011, expert disclosures completed by September 2011, summary judgment arguments heard on October 14, 2011, mediation occurred on November 1-2, 2011, and the case is currently scheduled to go to trial on June 11, 2012. (Stinson Decl., Ex. C.) Essentially, it is Avidyne's position that Desjardins waited to file his motion to intervene because he wants to get a "second bite at the apple" regarding information that he was unable to access during the course of the Minnesota case's discovery process.

The court agrees that Desjardins' timing in filing this motion is likely motivated by a desire to secure access to all Avidyne documents in the event that they may prove helpful to his case. However, this does not render untimely his otherwise timely motion. The motion to intervene was filed approximately two months after this court entered its summary judgment Findings and Recommendation, but prior to its adoption by District Judge Anna Brown.

Page 6 - OPINION AND ORDER

Desjardins has probably been keeping close watch on this case, and upon learning that the court issued sealed and redacted versions of its Findings and Recommendation and kept many of the underlying materials under seal, he decided to take action to gain access to those materials by way of filing this motion. He made an initial inquiry to the court by letter one month after the Findings and Recommendation was filed, and filed this motion approximately one month after that. Thus, the motion to intervene is timely.

### 2. **Applicant's Interest**

Desjardins' stated interest for intervention is as a member of the public who has an interest in viewing the full court record in this case to understand the rationale behind the court's summary judgment opinion and also to gain a "keener insight" into the cause of the crash. Avidyne contends that Desjardins really seeks intervention to obtain documents and information from this case for his use in the Minnesota case.

Desjardins' argument that he be permitted to intervene as a matter of right based on the public's common law right of access to the courts is not the type of interest that Rule 24(a) is designed to protect. While he need not establish a "specific legal or equitable interest," Desjardins' interest in the lawsuit must be "significantly protectable." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). To demonstrate this interest, Desjardins must establish that "(1) the interest [asserted] is protectable under some law, and (2) there is a relationship between the legally protected interest and the claims at issue." *Northwest Forest Resource Council v. Glickman*, 82 F.3d 826, 837 (9th Cir. 1996) (citations omitted). Generally, the "relationship" requirement is met "only if resolution fo the plaintiff's claims will affect the applicant." *Donnelly*, 159 F.3d at 410 (citations omitted). Desjardins' stated interest as a member of the

Page 7 - OPINION AND ORDER

general public in having unfettered access to the court record is not the type of significantly protectable interest required for intervention as of right. The court acknowledges that the Ninth Circuit recognizes that the public has a common law right of access to prejudgment civil court records. *San Jose Mercury News*, 187 F.3d at 1101-02 (holding that the public has a prejudgment right of access to judicial records in civil cases on the basis of the federal common law and the Federal Rules of Civil Procedure, but "leav[ing] for another day the question of whether the First Amendment also bestows [this right]."). Moreover, all of the cases cited by Desjardins concern the public's First Amendment right of access to criminal trials, which is not relevant to the issue of whether he has demonstrated a "significant protectable interest" for purposes of intervention as of right. As Desjardins himself points out, the controlling case law regarding intervention as of right under Rule 24(a) demonstrates that the rule is designed to allow non-parties to intervene in order to influence the outcome of the litigation in some way, which is not what Desjardins seeks here. Permissive intervention, discussed next, is the more appropriate vehicle for Desjardins to intervene on the basis of the public's right of access to sealed civil court records. *San Jose Mercury News*, 187 F.3d at 1100 ("Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)").

Despite having found no significantly protectable interest related to Desjardins' role as a member of the general public, the court will consider whether he may intervene as of right, by way of his role as plaintiffs' counsel in the Minnesota litigation since it is clear that what Desjardins really seeks is access to sealed documents and other discovery materials produced in this ongoing litigation since it concerns the same defendant, Avidyne, and the same allegedly defective equipment, the PFD, at issue in the Minnesota case. (*See* Stinson Decl., Ex. A, p. 1

Page 8 - OPINION AND ORDER

(Desjardins' December 13, 2011, letter stating "I presently represent two families who lost their loved ones in another plane crash which we have alleged was caused in part by a defectively designed Avidyne PFD.").)

Based on the record currently before the court, it appears as though the Minnesota aircraft was equipped with an Avidyne PFD and MFD with data recording capabilities, and had two PFD displays, one in front of the pilot and one in front of the co-pilot. (Stinson Decl., Ex. G at pp. 3-4; Bloomfield Decl. (#228) at ¶ 21, Ex. D at pp. 3-4, 17-18.) During the course of the Minnesota flight, which was in instrument meteorological conditions ("IMC") because of a thunderstorm, the pitot tubes, through which the aircraft senses airspeed, iced over, causing an airspeed reading of zero. (Bloomfield Decl., Ex. D at p. 3.) Airspeed is one component of air data, which is comprised of three values: airspeed, vertical speed, and altitude. Plaintiffs' theorize that the design of the PFD was such that when the PFD received the airspeed reading, the software replaced all three air data values with a large red "X" even though only a single air data measurement was faulty. (Stinson Decl., Ex. G at pp. 4-6; Bloomfield Decl., Ex. D at pp. 3-6.) Thus, a faulty airspeed measurement would infect the rest of the air data displayed on the PFD, but the pilot would be unaware of exactly which measurement was inaccurate (airspeed, vertical speed, or altitude), and would be confronted with the difficult task of trying to determine which of the three air data values was inaccurate. (Stinson Decl., Ex. G at pp. 6-7; Bloomfield Decl., Ex. D at pp. 3-6, 16-18.) Moreover, there is some evidence that the co-pilot's PFD and the pilot's PFD were displaying different failure warnings at different times, further compounding the Minnesota pilot's confusion. (*Id.*) Approximately two minutes after the Minnesota pilot received the first false air data warning on one of the PFDs, the plane was destroyed in an in-

Page 9 - OPINION AND ORDER

flight breakup and all on board were killed.  (Stinson Decl., Ex. G at pp. 7-9; Bloomfield Decl.,
Ex. D at pp. 3-6.)

Here, Otoski's theory of the crash is that a foreign object was improperly soldered
between two pins on the J1/P1 connector inside the PFD, and that over time, this metal disk
created an electrical connection which led to an inaccurate display of attitude and heading
information on Dr. Otoski's PFD during the fight, ultimately causing him to crash.  The court
acknowledges that this theory which centers upon a defect that manifested itself as an
intermittent electrical connection that affected the display of attitude and heading data, differs
from the Minnesota case's theory, which centers around a software design flaw that affected the
PFD's display of airspeed, vertical speed, and altitude.  However, keeping in mind that the Ninth
Circuit has directed that the interest requirement of Rule 24(a)(2) be interpreted broadly in favor
of intervention, *Greene*, 996 F.2d at 976, the interests in the Minnesota litigation are sufficiently
similar to those in this case since it involves the same defendant, Avidyne, the same allegedly
defective product, the PFD, and the same alleged malfunction, a display of inaccurate data to the
pilot.

### 3. **Impairment of Applicant's Ability to Protect Interest**

At the time that this motion was filed, discovery in the Minnesota case had closed,
dispositive motions had been resolved, settlement discussions concluded, and trial set for June
2012.  By all accounts, that case appears to be moving along.  Desjardins has not presented any
evidence that he or his clients have been denied relief by the Minnesota courts such that in order
to protect their interests, this court must allow him to intervene in this case.

While the court considers several factors in determining whether the proposed

Page 10 - OPINION AND ORDER

intervenor's interests can be adequately protected without intervention, the "most important

factor . . . is how the interest compares with the interests of existing parties. When an applicant

for intervention and an existing party have the same ultimate objective, a presumption of

adequacy of representation arises." *Arakaki*, 324 F.3d at 1086 (citing *League v. United Latin Am.*

*Citizens*, 131 F.3d at 1305)).  The Minnesota plaintiffs have the same ultimate objective as

plaintiff Otoski does in this case – to hold Avidyne responsible for any defect in its PFD that

caused the accidents that form the basis of the lawsuits.  While their theories may differ

somewhat, they are ultimately pursuing the same things.  In fact, Otoski's counsel in this case

served as Desjardins' co-counsel in the *Jones* case.  Moreover, during discovery, Otoski's

counsel indeed filed several motions to unseal various exhibits, depositions, and memoranda (*See*

Amended Order (#54)) and also expressed many of the same concerns Desjardins presently raises

regarding the sealed summary judgment Findings and Recommendation, but ultimately decided

to forego pursuing them at this juncture in order to move this case along.

Consequently, the court finds that the outcome of this case will not have any impact on

Desjardins' ability to protect his or his clients' interests.  Nor has he demonstrated a significant

protectable interest to intervene as a member of the general public.  Accordingly, Desjardins

should not be permitted to intervene as a matter of right under FRCP 24(a)(2).

### B. Permissive Intervention

FRCP 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to

intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim

or defense that shares with the main action a common question of law or fact."  An applicant

seeking to intervene under this rule must demonstrate that the court has an independent basis for

Page 11 - OPINION AND ORDER

jurisdiction, the motion is timely, there are common questions of law or fact. *Donnelly*, 159 F.3d at 412; *Northwest Forest Resource Council*, 82 F.3d at 839. Even if an applicant satisfies the threshold requirements, the court still has discretion whether to grant permissive intervention. *Id.*

### 1. <u>Independent Ground for Jurisdiction</u>

Where applicants do not seek to litigate a claim on the merits, but rather, seek to modify a protective order, an independent jurisdictional basis is not needed. *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 473-74 (9th Cir.), *cert. denied*, 506 U.S. 868 (1992). Desjardins seeks to intervene for the limited purpose of modifying the protective order so that he and the general public can access to the unredacted summary judgment Findings and Recommendation and underlying documents. Accordingly, Desjardins need not establish an independent jurisdictional basis.

### 2. <u>Timeliness</u>

The timeliness requirement is also relaxed when intervention is sought for the purpose of modifying a protective order. *See Beckman*, 966 F.2d at 471, 473 (intervention allowed two years after underlying case terminated); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), *cert. denied*, 498 U.S. 1073 (1991) (intervention permitted three years after underlying action settled and dismissed). As discussed above, the motion is timely.

### 3. <u>Common Question of Law or Fact</u>

Where, as here, the applicant does not seek to become a party to the litigation, but seeks to intervene solely for the purpose of modifying a protective order, there need not be as strong a connection between the facts or law. *Beckman*, 966 F.2d at 474. As noted above, the customary process for a non-party seeking to modify a protective order to gain access to sealed judicial

records is permissive intervention. *San Jose Mercury News*, 187 F.3d at 1100; *see also Chasse v. Humphreys*, CV-07-189-HU, 2007 WL 4165741, at *1 (D. Or. Nov. 19, 2007). Thus, Desjardins may permissively intervene as a member of the general public for purposes of challenging the protective order.

Moreover, access to documents for similar litigation involving the same defendant and the same allegedly defective equipment satisfies the commonality requirement required by FRCP 24(b) so long as there is a showing of "the importance of access to documents prepared for similar litigation involving the same parties." *Beckman*, 966 F.2d at 474. Courts have found these interests sufficient to permit timely intervention for purpose of modifying a protective order because of the considerable efficiency and savings of time and effort in avoiding duplicative discovery. *Id.* at 475.

Otoski and Desjardins' clients in the Minnesota case each allege claims for strict products liability and negligence against Avidyne because of the allegedly defective condition of the PFD installed in the respective accident aircraft. As noted above, the theories of the two accidents are different. Otoski's theory centers upon a foreign object that over time caused an intermittent electrical connection which interfered with the accurate display of attitude and heading information on the PFD. The Minnesota case focuses on a software design flaw which coupled the air data indicators of airspeed, vertical speed, and altitude, such that if one of the measurements was compromised, the PFD displayed an error message for all three.

There are many differences between this case and the Minnesota case, to be sure. This case centers upon an alleged manufacturing defect, while the Minnesota case is concerned with

the software design. Here, the allegedly compromised indicators are attitude and heading, while in the Minnesota case, the indicators at issue are air speed, altitude, and vertical speed. The Minnesota case also focuses on the iced over pitot tube as a contributor to the accident, while here, Dr. Otoski's flight behavior may have contributed to the crash. Notwithstanding the differing particulars of the alleged flaw, the particular equipment at issue, the circumstances of the accidents and potential alternative causes for the crashes, both cases center upon the effect that the allegedly flawed PFD had on the data displayed to the pilot during critical moments of the flights when they had limited outside visibility and thus, had to rely upon the instruments inside the cockpit in order to make decisions. If plaintiffs' theories are to be believed, the PFD was providing inaccurate information to the pilots, but the information was not so wildly inaccurate as to allow the pilot to quickly determine the error and thus, which backup instruments upon which he should rely. Instead, the information displayed on the PFD was contributing to the pilot's confusion and he was required to waste critical seconds trying to figure out what was happening. The bottom line is that had the PFDs installed in the accident aircraft been better manufactured and/or designed, the pilots would not have become confused and would not have had the accidents that caused their deaths. The legal and factual issues between the two cases are sufficiently similar to allow Desjardins to permissively intervene to access to the sealed summary judgment materials as counsel in the Minnesota case.

Keeping in mind that there need not to be "such a strong nexus of fact or law" when the party does not seek to litigate the claim on the merits, Desjardins should be permitted to permissively intervene to access to the sealed summary judgment materials as a member of the

public and as counsel in the Minnesota case. Consequently, Desjardins' motion for permissive intervention for the limited purpose of challenging the protective order should be granted.

The precise contours of the modification will be addressed at a later date. As part of his briefing, Desjardins identified the specific documents which he seeks to unseal, but at the hearing, Avidyne requested additional time to respond. Avidyne will be permitted three weeks from the date of this order to file its response to the specific documents, and the court will take the matter under advisement at that time.

### ORDER

For the reasons set forth above, Desjardins' motion to intervene (#220) is granted and he is permitted to permissively intervene for purposes of challenging the protective order. Avidyne is directed to file its response to the specific documents that Desjardins seeks to unseal within three weeks of the date of this order.


DATED this 9th day of March, 2012.

Paul Papak
United States Magistrate Judge


Page 15 - OPINION AND ORDER